UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

Case No. 10-20338

v.

Paul D. Borman
United States District Judge

FRANKLIN GONZALO SIERRA-RODRIGUEZ, D-1

        Defendant.

_____/

## OPINION AND ORDER
## DENYING DEFENDANT SIERRA-RODRIGUEZ'S MOTION TO SUPPRESS ELECTRONIC SURVEILLANCE EVIDENCE: "ALL LIVE CELLULAR PHONE SITE DATA AND PRECISION LOCATION DATA" AS TO TELEPHONE NUMBER ENDING IN -7936 (DKT. NO. 248)

This matter is before the Court on Defendant Sierra-Rodriguez's Motion to Suppress Evidence (Dkt. 248). The Government filed a Response (Dkt. 263). Defendant filed a Reply (Dkt. 297). The Court held a hearing on March 19, 2012. For the reasons that follow, the Court DENIES Defendant Sierra-Rodriguez's Motion to Suppress Evidence of Cellular Phone Site and Precision Location Data as to Telephone Number Ending in -7936.

This Motion seeks to suppress fruits of electronic surveillance obtained pursuant to a search warrant for acquisition of live cell site data and precision location data regarding cell phone number ending in -7936. At issue is the affidavit of DEA Special Agent Marwan Kassar provided to the

1

Magistrate Judge on May 20, 2010, in support of the search warrant which was authorized on May 20, 2010, to expire on June 3, 2010.

Defendant challenges the affidavit in support of the search warrant as lacking probable cause, and further, argues that the good faith exception to the exclusionary rule is not applicable because law enforcement reliance on the warrant was not reasonable.

## I. FACTUAL BACKGROUND: SA KASSAR'S AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT

As part of an ongoing investigation into narcotics distribution, Drug Enforcement Administration (DEA) agents identified co-defendant Enrique Amaya (D-2) as a major source of supply of narcotics in the Detroit area in November 2009. DEA agents also determined that co-defendants Jesus Daniel Medina-Meraz (D-4) and Franklin Baquedano (D-3) were co-conspirators of co-defendant Amaya.

On May 13, 2010, the Government obtained Federal Court Title III authorization to intercept co-defendant Amaya's cellular telephone calls. Among the calls the Government intercepted were three calls between co-defendants Amaya and Baquedano: Session Number 357 (May, 14, 2010 at 3:54 p.m.); Session Number 1336 (May 18, 2010 at 5:31 p.m.); and Session Number 1341 (May 18, 2010 at 5:48 p.m.). It is the substance of these three intercepts that provided critical facts in support of the May 20, 2010 search warrant at issue in this Motion.

The following are the partial transcripts of the three intercepted conversations, as set forth in Special Agent (SA) Kassar's affidavit:

## Session Number 357
(May 14, 2010 at 3:54 p.m.)

BAQUEDANO: Hey, when I see you later tonight, we need to talk about that job. The guy has already given me an estimate and told me that if we want . . .

AMAYA: All right, but I need you to do it tomorrow.

BAQUEDANO: Tomorrow is fine, but I need to talk to you about the estimate because the guy says that he needs some money in advance in order to eat on the road, but he needs to . . . I need to talk to you because the guy says he needs to spend at least 3 days over there to find out how things are, just to make sure.

AMAYA: Oh, but it is supposed to be done really fast, just go over there and get out. If this is not done tomorrow, I will have to wait until I get more money, dude.

BAQUEDANO: Oh okay.

AMAYA: Do you understand what I'm saying? I will have to wait again.

BAQUEDANO: And then . . . if it wasn't the two of us, I will do the job by myself, but it is too far away. It's about 20 hours. It's too far, otherwise I will do it myself.

AMAYA: Why don't you do it yourself?

BAQUEDANO: Because I don't have a license, dude. That's why I was telling you that if I had a license, I would do it myself for sure. But if you want, we can leave tonight.

AMAYA: But . . . do you have somebody to go with you?

BAQUEDANO: Well, you.

AMAYA: No, I can't go because I have to stay here. I have to prove to them that I am in town dude. If I can't prove that I am in town . . .

BAQUEDANO: Yeah, I understand now.

### Session Number 1336
(May 18, 2010 at 5:31 p.m.)

AMAYA: How much he wants to go?

BAQUEDANO: Well, I told him that we will give 5 for everything. That way, that way we can each make at least 3. Well me, uhh, so we can make that money.

AMAYA: Yeah, but . . . uh . . . but I need him to do it on the weekend.

BAQUEDANO: That's why I'm telling you, let's go and talk to him.

AMAYA: Aha, but how much he wants?

BAQUEDANO: Uhh, that's why I'm telling you, let's go and talk to him. Because he said, he said that half.

AMAYA: No, not half because I, I have already been screwed once before.

BAQUEDANO: Yeah, no, no, half is too much only for, only for his expenses.


### Session Number 1341
(May 18, 2010 at 5:48 p.m.)

BAQUEDANO: So, so what do you want me to tell that guy?

AMAYA: Which guy?

BAQUEDANO: To, to, to (unintelligible), the guy that we are going to send over there.

AMAYA: Well, let's go and talk to him.

BAQUEDANO: Okay, let me call him first.


After Session Number 1341, the Government obtained through subpoena co-defendant Baquedano's telephone records. The records revealed that immediately after Session Number 1341

4

concluded, – his last words to Amaya were "okay, let me call him first" – co-defendant Baquedano called the cellular telephone at issue, ending in -7936. The Government contends that the call to -7936 was to the third party, described by Amaya at the end of Session Number 1341 as "the guy that we are going to send over there," that will travel out of state to procure drugs on behalf of Amaya. The Government learned that the cellular telephone ending in -7936 subscribed to by a Franlin Sierra at P.O. Box 54988, Irvine, CA (Boost Mobile's Corporate headquarters postal address), belonged to Defendant Franklin Gonzalo Sierra-Rodriguez. Thereafter, SA Kassar applied for and obtained the instant search warrant for live cell site data and precise location data for Defendant Sierra-Rodriguez's cellular telephone, ending in -7936

Defendant Sierra-Rodriguez argues that SA Kassar's affidavit failed to establish probable cause in support of the instant search warrant, and therefore the evidence obtained from the search warrant should be suppressed. The Government responds by arguing, initially, that a search warrant was not required because the disclosure of cellular telephone data falls under the authority of the Pen Register Statute, 18 U.S.C. §§ 3121 *et seq.*, and the Stored Communications Act (SCA), 18 U.S.C. §§ 2701 *et seq.* The Government further argues that, even if a search warrant was required, it obtained one which was supported by probable cause. Finally, the government contends that, even if the search warrant was defective under the Fourth Amendment, the good faith exception to the exclusionary rule applies to this search warrant.

II. ANALYSIS

   A. **Stored Communications Act**

The Stored Communications Act (SCA), 18 U.S.C. §§ 2701 *et seq.*, governs compelled disclosure of cellular telephone data. Section 2703(c) states:

> (c) Records concerning electronic communication or remote computing service. --
>
> > (1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity - -
> >
> > > (A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction;
> > >
> > > (B) obtains a court order for such disclosure under subsection (d) of this section;
> > >
> > > (C) has the consent of the subscriber or customer to such disclosure;
> > >
> > > (D) submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing (as such term is defined in section 2325 of this title); or
> > >
> > > (E) seeks information under paragraph (2).

18 U.S.C. § 2703(c).

As made clear by its title, this subsection applies to electronic communication and remote computing service. The government does not contend that the information it sought falls under the heading of remote computing service. Instead, it argues that the data it sought was an electronic communication. An electronic communication has the same definition in § 2703 as it does in § 2510. 18 U.S.C. § 2711. Specifically excluded from the definition of electronic communication is "any

communication from a tracking device (as defined in section 3117 of this title)." 18 U.S.C. § 2510(12)(C). A tracking device "means an electronic or mechanical device which permits the tracking of movement of a person or object." 18 U.S.C. § 3117(b).

The manner in which the Government used Defendant Sierra-Rodriguez's cellular telephone rendered the cellular telephone a tracking device for the purposes of the statute. As the Government stated in its response, cellular telephones transmit unique identification signals to antenna towers whenever the telephone is on, regardless of whether the customer is receiving or making calls. The signals are received by every antenna tower within range of the telephone, such that the location of the telephone can be determined based on the location of the antenna towers, or triangulation. The Government sought this information for the purpose of tracking Defendant Sierra-Rodriquez's movement.

The Authorization Request section of SA Kassar's affidavit makes clear that the Government intended to use Defendant Sierra-Rodriquez's cellular telephone as a tracking device:

> The requested information is necessary to determine the approximate location of the above described individual so that law enforcement agents can conduct physical surveillance and trace his location in the event he travels outside the Detroit, MI metropolitan area or any other location outside of the state of Michigan in furtherance of his illegal drug trafficking activities.

Search Warrant Affidavit, ¶ 21.

The Government did not proceed under § 2703(c)(1)(B), to seek a court order, but instead sought a search warrant under § 2703(c)(1)(A).[1] To obtain a court order under § 2703(c)(1)(B), the Government has to offer "specific and articulable facts showing that there are reasonable grounds

---

[1] At the same time, the Government did note in footnote 1 of its affidavit that it "does not concede that such cell site records routinely retained by wireless carriers as business records may only be obtained via a warrant issued on probable cause."

7

to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation . . . ." 18 U.S.C. § 2703(d).

The Government contends that because the statute permits the compelled disclosure of records containing electronic communication by means of a court order, it was not required to obtain a search warrant. While this is a correct reading of the statute, it ignores the fact that the Government did not obtain a court order in the instant case, but instead sought a search warrant.

The Government contends, nevertheless, that suppression is not an appropriate remedy because the SCA does not provide suppression of evidence as an available remedy, and the SCA states that "[t]he remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter." 18 U.S.C. § 2708. While the Court recognizes that Congress has spoken on this issue as to nonconstitutional violations, the Court concludes that it best deal with Defendant's Fourth Amendment argument. At the same time, the Court does note that in *Illinois v. Krull*, 480 U.S. 340, 342 (1987), the Supreme Court held that the exclusionary rule should not be applied, for the reasons set forth in *United States v. Leon*, 468 U.S. 897 (1984), "when officers act in objectively reasonable reliance upon a *statute* authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." (emphasis in original).

### B.   Probable Cause

Defendant Sierra-Rodriguez challenges the validity of the search warrant, arguing that SA Kassar's affidavit did not establish probable cause to believe that evidence of a narcotics conspiracy would be found by obtaining cellular tower data. The suppression of evidence is an available remedy

where the evidence was obtained in violation of the Fourth Amendment because such a violation would be a constitutional violation, and would not fall under § 2708. As discussed below, however, the Magistrate Judge who signed the instant search warrant was provided with probable cause to satisfy the Fourth Amendment.

"To establish probable cause, this court has explained that 'the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought.'" *United States v. Howard*, 621 F.3d 433, 455 (6th Cir. 2010) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). The Court reviews the affidavit "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (quoting *Carpenter*, 360 F.3d at 594)).

In Session Number 357, co-defendants Amaya and Baquedano discussed a "job" that a third party is going to undertake. Co-defendant Baquedano stated that he cannot do the job himself because "it is too far away. It's about 20 hours." Co-defendant Amaya stated that he cannot do the job himself because he had "to prove to them that [he is] in town."

SA Kassar believed, based on his training and experience, that the covert manner in which co-defendants Amaya and Baquedano were discussing the proposed trip, as well as the fact that co-defendant Baquedano listed a false address on his cellular telephone subscription (the *very same* false address Defendant Sierra-Rodriguez had listed in his cellular telephone subscription, see ¶ 17 of the affidavit), supported his belief that co-defendants Amaya and Baquedano were coordinating an out-of-town trip in which a to-be-recruited third party would procure narcotics on behalf of co-defendant Amaya.

In Session Number 1336, co-defendants Amaya and Baquedano discussed how much to pay "him to do it on the weekend." Co-defendants Amaya and Baquedano wanted to "talk to him" because "he" wanted to be paid half, but "half is too much only for, only for his expenses."

SA Kassar believed that co-defendants Amaya and Baquedano were discussing the same trip in Session Number 1336 that they were discussing in Session Number 357.

In Session Number 1341, co-defendant Baquedano asked what co-defendant Amaya wanted him to tell "the guy that we are going to send over there." Co-defendant Amaya stated that they should talk to him, at which point co-defendant Baquedano stated that he will "call him."

SA Kassar believed that co-defendants Amaya and Baquedano were again discussing a trip in which the to-be-recruited third party would travel outside of the state of Michigan to procure drugs on behalf of co-defendant Amaya. SA Kassar also believed that co-defendants Amaya and Baquedano were planning on meeting with the third party to discuss his compensation for making the out-of-state trip.

According to the toll information, the telephone number co-defendant Baquedano immediately called upon the conclusion of Session Number 1341, ending in -7936, was a Boost Mobile telephone subscribed to Franlin Sierra at PO Box 54988, Irvine, CA. SA Kassar knew that Boost Mobile telephones are obtainable by consumers without providing any form of identification or personal information, and therefore are used by narcotics traffickers because of the anonymity provided by these phones. PO Box 54988, Irvine, CA is the corporate headquarters for Boost Mobile. SA Kassar knew that narcotics traffickers frequently use fictitious names and/or addresses when purchasing cellular telephones in an effort to elude detection by law enforcement. And SA

Kassar knew that co-defendant Baquedano had also used that erroneous subscriber – anonymous address in subscribing to his cellular telephone.

The Court is satisfied that the instant affidavit sufficiently established probable cause that the recipient of that call, subscriber Franlin Rodriguez, was the recruit for the trip. SA Kassar also knew that co-defendant Amaya had a criminal association with co-defendant Medina-Meraz, a resident of Colorado. In December 2009, law enforcement officers observed co-defendant Amaya and co-defendant Medina-Meraz engage in a suspected narcotics-related drug transaction. SA Kassar also knew that co-defendant Medina-Meraz lived in the Denver, Colorado metropolitan area.

Further, in March 2010, a suspected co-conspirator of co-defendant Amaya was arrested in Iowa on the way to Michigan with 6 kilograms of cocaine. SA Kassar believed that the individual was transporting the drugs to the Detroit, Michigan metropolitan area on behalf of co-defendant Amaya.

The Court concludes that the Magistrate Judge who signed the instant search warrant was provided with probable cause to satisfy the Fourth Amendment. He had a substantial basis, relying on SA Kassar's affidavit setting forth knowledge of co-defendants Amaya, Baquedano, and Medina-Meraz, and also on the contents of the intercepted conversations, to believe that the recruited third party would travel to Colorado to sell or procure narcotics, and that the cellular telephone that co-defendant Baquedano called immediately after Session Number 1341 belonged to the third party traveler discussed in the three excerpts discussed *supra*, F/K/A Franlin Sierra N/K/A co-defendant Franklin Gonzalo Sierra-Rodriguez. Accordingly, the search warrant was valid.

## C. Good Faith Exception

Even if the warrant did not establish probable cause, the evidence obtained from it should not be suppressed because the Government agents relied on the court authorized warrant in good faith. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court ruled that the exclusionary rule does not apply where a law enforcement officer reasonably relies on a magistrate judge's probable cause determination in good faith. The Court stated, however, this good faith exception does not apply where (1) the supporting affidavit contains information the affiant knew or should have known was false; (2) the issuing magistrate lacked neutrality and detachment; (3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause existed completely unreasonable; or (4) the warrant is facially deficient. *Id.* at 905, 914-15, 922-23.

Defendant Sierra-Rodriguez argues the third exception. As discussed in II.B., *supra*, probable cause existed based on the totality of the factual circumstances set forth in the affidavit. *See Illinois v. Gates*, 103 S.Ct. 2317, 2335 n. 13 (1983) ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts.").

Even if the affidavit did not establish probable cause, the evidence obtained from the search warrant executed should not be suppressed because the good-faith exception should apply under *Leon*. *See United States v. Washington*, 380 F.3d 236, 242-43 (6th Cir. 2004) ("There have been several recent cases, all of which involved questions about the nexus between criminal activity and

12

places, where this court has found that probable cause did not exist, but that the good-faith exception should apply. . . . In this case, even assuming probable cause was not established, it is clear that the affidavit included enough facts with respect to the nexus between the criminal activity and the Crossgate residence to overcome the 'so lacking' hurdle.").

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress Evidence Seized from the Use of Live Cellular Telephone Site Data and Precision Location Data is DENIED.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 4-10-12