UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

                                Case No. 10-20338

v.                              Paul D. Borman
                               United States District Judge

FRANKLIN GONZALO SIERRA-RODRIGUEZ

        Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT SIERRA-RODRIGUEZ'S MOTION TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF JUNE 2, 2010 TRAFFIC STOP IN HOUSTON, TEXAS (DOCKET NUMBERS 221 AND 249)

This matter is before the Court on Defendant Sierra-Rodriguez's Motion to Suppress Evidence Seized as a Result of the June 2, 2010 Traffic Stop (Dkts. 221 and 249). The Court held an evidentiary hearing on March 29, 2012. For the following reasons, the Court DENIES Defendant Sierra-Rodriguez's Motion to Suppress.

I.      INTRODUCTION

As part of an ongoing investigation into narcotics distribution, Drug Enforcement Administration (DEA) agents identified co-defendant Enrique Amaya as a major source of narcotics in the Detroit metropolitan area. On May 13, 2010, the Government began monitoring co-defendant Amaya's cellular telephone pursuant to a Title III order issued by a United States

1

District Court Judge. Among the calls the Government intercepted were these pertinent calls: Session 3983; Session 3990; Session 4135; and Session 4763.

Session 3983 occurred in May 29, 2010. The following is a partial transcript:

| | |
|---|---|
| AMAYA: | I have a job for you. Do you want it or not? |
| PAJARO:[1] | What is it? |
| AMAYA: | To take a guy to Colorado. |
| PAJARO: | Who? |
| AMAYA: | Is a guy. |
| PAJARO: | With the license plates from over here, is going to be very hot. |
| AMAYA: | If you find someone who can take him. He doesn't have to pay anything. Everything is going to be paid for her. Gas, expenses, all, the hotel is going to be paid over there to the person who takes him. |
| PAJARO: | Uh-huh. |
| AMAYA: | To the person who takes him, they'll pay all expenses, hotel, they just have to wait for him two days. Two or three days. |
| AMAYA: | But you have to have a license. |
| PAJARO: | Yeah, they have a license. |
| AMAYA: | Tell them that they'll pay $1000 bucks. |
| PAJARO: | All right. |
| AMAYA: | $1000 bucks and all expenses paid. |
| PAJARO: | Okay. All right. Let me call and I'll call you back and see what they tell me. |

---

[1] PAJARO was later determined to be former co-defendant Jose Alejandro Villalon-Espinoza, who is not one of the five co-defendants proceeding to trial.

Session 3990 occurred approximately 15 minutes after Session 3983 concluded. The following is a partial transcript:

PAJARO: Uh, I found a girl.

AMAYA: How much does she want?

PAJARO: I told her what you told me.

AMAYA: And she said it was all right?

PAJARO: That it was okay. She says that she'll go.

AMAYA: Okay.

PAJARO: But there's going to be two of them. Her sister is going too.

AMAYA: All right, no problem. But there's only one guy going with her.

PAJARO: Okay, as long as the guy doesn't tell her anything.

AMAYA: No, it's okay. The guy won't tell her anything.

PAJARO: I just wanted to know if you wanted her.

AMAYA: Yeah, all right. But tell her that today because the guy has to go see the work over there.

Session 4135 occurred several hours after Session 3990 concluded. The following is a partial transcript:

AMAYA: Hey, what happened with the dude? Is he ready?

PAJARO: Yes.

AMAYA: OK. The thing . . . tell him that it is at the church, across the street from my house.

PAJARO: Oh, it's there?

AMAYA:     It is there. It's a burgundy one.

DEA agents conducted surveillance in the vicinity of 53 West Columbia, Defendant Amaya's residence. Agents observed Defendant Amaya and several other individuals standing in the vicinity of a burgundy 2002 Pontiac Grand Prix with Michigan license plate CDA 6767. At approximately 8:30 p.m. on May 29, 2010, agents observed Defendant Sierra-Rodriguez and two females depart in the Grand Prix.

On June 1, 2010, Colorado law enforcement officers contacted Special Agent (SA) Jeneary and informed him that Joaquin Lucero Carrillo was murdered in the early morning hours of June 1, 2010 in Littleton, Colorado. Witnesses stated that the murderer was wearing a white hooded ECKO brand sweatshirt. SA Jeneary was also informed that a vehicle located near the homicide situs was registered to co-defendant Jesus Daniel Medina-Meraz, one of co-defendant Amaya's suspected co-conspirators. SA Jeneary was also informed that the victim, Carrillo, had listed co-defendant Medina-Meraz as an emergency contact on his leasing agreement for the Colorado apartment. Colorado law enforcement officers also informed SA Jeneary that an eyewitness present at the time of Carrillo's murder, described the suspect as an Hispanic male wearing a white hooded ECKO brand sweatshirt, who departed the homicide scene in what appeared to be a dark Pontiac Grand Am. Additionally, the cell site location data from Defendant Sierra-Rodriguez's cellular telephone indicated that he was in the area of Littleton, Colorado from May 30, 2010 through the early morning hours of June 1, 2010, the latter being the time of the murder.

On June 1, 2010 at 1:04 p.m., DEA agents intercepted a call between Defendant Amaya and Defendant Villalon-Espinoza, Session 4763. The following is a partial transcript:

| | |
|---|---|
| PAJARO: | They say that they got lost but they're in Kansas. |
| AMAYA: | Where? |
| PAJARO: | Kansas or Arkansas. Kansas, I think, yeah, Kansas City. They took the wrong road. |
| AMAYA: | The three of them are on their way back. |

This obviously refers to the returning trio, co-defendant Sierra-Rodriguez and the two women in the Grand Am.

Later that same day, the Government intercepted a call between Defendant Amaya and an unidentified woman, Session 4890. The following is a partial transcript:

| | |
|---|---|
| AMAYA: | I provoked it but . . . at same time, I felt bad. |
| WOMAN: | You provoked it? |
| AMAYA: | Yeah. |
| WOMAN: | You did it? |
| AMAYA: | I sent the guy. |
| WOMAN: | Why do you do that? |
| AMAYA: | Today. In the morning, my cousin also called me and I asked what was going on. |
| WOMAN: | He must have known. |
| AMAYA: | Yeah, well he did know. He and I were . . . about to . . . do it. We were together. |
| WOMAN: | Oh man! |
| AMAYA: | It got paid between us. |
| WOMAN: | Look, you can't say for sure . . . |
| AMAYA: | Of what? |

| | |
|---|---|
| WOMAN: | That you guys did it. |
| AMAYA: | There is no sure thing. |
| WOMAN: | No. |
| AMAYA: | We had, we had it well . . . It took us a long time of planning it well. |
| WOMAN: | Why is it that you trust me? |
| AMAYA: | I don't know, just because. |
| AMAYA: | No well, he just said he was waiting for him outside all day yesterday. He came out. He came out of the apartment so, he knocked on the door and he opened and he put holes in him. At . . . he called me 3 times in the morning to . . . he called me and told me it's done. The tree fell. That was all. I told him, OK. And at . . . it was 7 in the morning here when my cousin called me. |

In this Session, co-defendant Amaya admits to planning the scheme, sending the hit man, and describes how the murder went down.

Based in part on the foregoing, SA Jeneary concluded that Defendant Sierra-Rodriguez was involved in the murder of Carrillo. Then, in the early morning hours, SA Jeneary secured the live precision location data for Defendant Sierra-Rodriguez's cellular telephone, and determined that Sierra-Rodriguez was in the area of Highway 290 and West Tidwell in Houston, Texas.

DEA SA Jeneary then contacted the Houston Police Department and informed them that the DEA was tracking a murder suspect via the suspect's cellular telephone, and had learned that the suspect was in the Houston area of Highway 290 and West Tidwell, and was known to be traveling with two women in a burgundy 2002 Pontiac Grand Prix with Michigan license plate number CDA 6767. Houston Police picked up on the chase by sending cars to check out the area of Highway 290 and West Tidwell.

Responding Houston Police Officer Martin Montalvo observed the vehicle in question in the parking lot of the Crosslands Economy Studio Motel, located at 5959 Guhn Road in Houston, Texas, and communicated that discovery to SA Jeneary. SA Jeneary told Officer Montalvo to watch the vehicle and to initiate a traffic stop if someone began driving the vehicle. A second responder, Houston Police Officer Vincent Johnson, had arrived at the scene and was also surveilling the Pontiac. Johnson observed an Hispanic male enter the vehicle, violate traffic laws in exiting the motel parking lot by (1) failing to signal a turn and (2) turning into traffic, and conveyed that information to Officer Montalvo. Following DEA agent Jeneary's request, Officer Montalvo and Officer Johnson initiated a felony stop of the Pontiac vehicle.[2]

Defendant Sierra-Rodriguez complied with the officer's requests to exit the car and get on the ground, and the officers handcuffed him. The officers searched Defendant Sierra-Rodriguez and discovered a wallet containing his identification and $464.00. Officer Montalvo then placed Defendant Sierra-Rodriguez in the back of the patrol car while Officer Johnson searched the interior of the Grand Prix. In the console of the Grand Prix, Officer Johnson found an additional $2,500.00 in cash.

Houston Police Sergeant Carroll, along with Officers Murphy and Snook, who also arrived at the arrest scene, drove to the motel where the two women traveling with Defendant Sierra-Rodriguez were staying. Officer Murphy knocked on the door, and two Hispanic women, identified as Trista Leal and Claudia Leal, answered the door. The women informed the officers that they had driven an Hispanic male to Houston in a burgundy Grand Prix. The women were

---

[2] A felony stop involves the officers staying by their vehicles with guns drawn and giving the suspect verbal commands.

then taken out and placed into police cars. DEA Special Agents Smith, Layne, and Wehrman subsequently arrived at the motel and took custody of Trista Leal and Claudia Leal. Prior to being transported to the DEA Houston office, when asked if she wanted her belongings which might be lost if remaining in the motel room after clockout time, Trista Leal asked the agents to retrieve her personal items from the motel room. SA Layne and SA Smith entered the motel room and instantly noticed a black and white hooded sweatshirt hanging in plain view in an open closet. Since SA Jeneary had informed the Houston DEA agents that witnesses had described seeing the murderer in a black and white ECKO brand hooded sweatshirt, the agents seized the sweatshirt and transported it to the DEA Houston office.

DEA agents searched the Grand Prix and determined it did not contain any weapons. After taking the women to DEA Houston headquarters, the agents released Trista Leal and Claudia Leal and permitted them to return to Michigan. Before leaving Trista Leal asked Defendant Sierra-Rodriguez if she could take the Grand Prix to drive back to Michigan; she testified that Defendant Sierra-Rodriguez said she could take the car, and also asked her to take his hooded sweatshirt.

## II. ANALYSIS

### A. Probable Cause

"[P]robable cause may be established from the collective knowledge of the police rather than solely from the officer who actually made the arrest." *United States v. Kendricks*, 127 F.App'x 836, 843 (6th Cir. 2005) (citations omitted). In the instant case, the probable cause focus is on the facts possessed by SA Jeneary when he ordered the arrest. Colorado law enforcement officers had informed SA Jeneary that a man connected to Defendant Medina-Meraz

had been murdered in Littleton, Colorado by an Hispanic male who had left the murder scene in a dark-colored Pontiac Grand Am. SA Jeneary knew that Defendant Sierra-Rodriguez left Michigan in a burgundy Grand Prix with two woman to go to Colorado to do a "job" for co-defendant Amaya, and that Defendant Sierra-Rodriguez was in the area of Littleton, Colorado at the time of the murder. SA Jeneary had also previously seen Sierra-Rodriguez in Pontiac, Michigan, and knew him to be an Hispanic male. Cell site tracking information provided to SA Jeneary evidenced that the car in which Sierra-Rodriguez had been travelling, had been in Colorado the night of the murder, and was now in Houston. SA Jeneary ordered Houston Police Officers Montalvo and Johnson to arrest Defendant Sierra-Rodriguez based upon what SA Jeneary knew about Defendant Sierra-Rodriguez and the murder.

The Court concludes that pursuant to Supreme Court and Sixth Circuit precedent, if SA Jeneary had probable cause to order the arrest, Officer Montalvo and Officer Johnson had lawfully arrested Defendant Sierra-Rodriguez. *See* LaFave, Israel, King & Kerr, Criminal Procedure § 3.3(e) P.138, and 138 n.185 respectively (West, 3d. ed. 2007): at page 138, the treatise states: "[T]he question legitimately is whether the law enforcement system as a whole has complied with the requirements of the Fourth Amendment, which means that the evidence should be excluded if facts adding up to probable cause were not in the hands of the officer or agency which gave the order or made the request.[185]" At page 138, note 185 states in pertinent part: "The affirmative side of *Whiteley* [v.*Warden*, 401 U.S. 560 (1971)] is that if there *is* probable cause at the source, then the officer's arrest is lawful.") (emphasis in original) (citations omitted). The Sixth Circuit decision in *Willis v. Neal*, 247 F. App'x. 738, 742 (6th Cir. 2007) states:

9

> Willis' primary argument on appeal is that the arresting officers had to know <u>personally</u> of the facts supporting a probable cause determination.... Many circuits, including our own, have determined that probable cause may be established from the collective knowledge of the police rather than solely from the officer who made the arrest. *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir. 1989).

(emphasis in original).

Defendant contends that because there was no credible basis for the early morning traffic stop and arrest of Defendant Sierra-Rodriguez in Houston – that the police allegations of failure to signal, and turning in front of traffic did not occur – the evidence seized as a result of the stop and arrest must be suppressed.

Because the Court concludes that there was ample probable cause to make the stop/arrest/search based on the information possessed by S.A. Jeneary who ordered the stop and arrest, discussed *infra*, the Court need not reach the issue of whether the alleged traffic violations supported the stop.

The Court does note that there was credible testimony at the evidentiary hearing by Houston Police Officer Johnson that he witnessed the violations before the stop.

The Court further notes the relevant legal precedent for traffic stops is discussed in the learned treatise, *LaFave, et al*, Criminal Procedure, § 3.5(b) P. 215:

> [A]s a result of the Supreme Court's unanimous decision in *Whren v. United States* [517 U.S. 806 (1996) ... when a purportedly pretextual traffic stop has been made on sufficient evidence of the traffic violation, no Fourth Amendment challenge may be undertaken on the grounds (I) that "the actual motivations of the individual officers" was to stop in order to investigate some other offense, or (ii) that "the officer's conduct deviated materially from usual police practices."

B.  Vehicle Search

Police officers may conduct a warrantless search of an automobile when the police officers have probable cause to believe there is contraband inside the automobile that has been stopped on the road. *United States v. Castro-Perez*, 113 F.App'x 92, 94 (6th Cir. 2004) (citing *Chambers v. Maroney*, 399 U.S. 42 (1970)). A warrantless search of an automobile is permitted because "the ready mobility of a motor vehicle is, in and of itself, 'an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear.'" *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)).

Moreover, because Officer Johnson had a reasonable suspicion that Defendant Sierra-Rodriguez was armed and dangerous based upon the information from SA Jeneary, Officer Johnson was permitted to search anywhere in the Grand Prix that a weapon may be hidden. *United States v. Graham*, 483 F.3d 431, 439-40 (6th Cir. 2007). It is immaterial that Defendant Sierra-Rodriguez was handcuffed in the back of a patrol car. In *Graham*, the Sixth Circuit upheld a warrantless search of a vehicle even though the defendant could not have gained access to a weapon in the car because he was handcuffed in the back of a patrol car with several officers guarding him. *Id.* at 440.

The Sixth Circuit's reasoning in *Graham* was that the defendant was not under arrest at the point in time when officers searched his vehicle, and therefore, if he was not arrested, he would be permitted to reenter his automobile and then have access to any weapons inside. *Graham*, 483 F.3d at 440. Even if the officers had no intention of allowing Defendant Sierra-Rodriguez to reenter the vehicle, the warrantless search of the vehicle was permitted. Based

11

upon the information provided by SA Jeneary, Officer Johnson had probable cause to believe that the Grand Prix contained evidence of the murder, and thus the warrantless search was permitted. *See Arizona v. Gant*, 556 U.S. 332, 347 (2009) ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 102 S.Ct. 2157 (1982), authorizes a search of any area of the vehicle in which the evidence might be found."). Thus, Officer Johnson's warrantless search of Defendant Sierra-Rodriguez's vehicle did not violate the Fourth Amendment.

### C. Seizure of the Hooded Sweatshirt

In *United States v. Caldwell*, 518 F.3d 426 (6th Cir. 2008), the Sixth Circuit affirmed the district court's determination that a woman had authority to permit officers to enter a hotel room because the woman had checked into the room with the defendant, had signed into the room as a registered guest, had placed her luggage and personal belongings in the room, had spent approximately the same amount of time in the room as the defendant had, exited the room with the defendant immediately before the search, and intended to stay overnight. *Caldwell*, 518 F.3d at 429.

In the instant case, Trista Leal had checked into the room with Defendant Sierra-Rodriguez. Indeed, the room was registered under her name, her luggage and personal belongings were in the room, and she was in the room when officers knocked on the door. Therefore, Trista Leal had authority to permit the officers to enter the hotel room. Trista Leal testified about this at the hearing.

Once the officers were legally in the room, they immediately noticed a black and white hooded sweatshirt hanging in an open closet, visible at the entryway. The officers took note of

the sweatshirt because they learned from SA Jeneary to be on the lookout for a white ECKO sweatshirt that witnesses had seen the murder suspect wear. Thus, the officers were legally in the hotel room; the sweatshirt was in plain view; the incriminating nature of the sweatshirt was readily apparent to the officers; and the officers had a lawful right to access the sweatshirt, and the "plain view" doctrine is applicable. *United States v. McLevain*, 310 F.3d 434, 439-43 (6th Cir. 2002). Thus, the officers were authorized to seize the sweatshirt.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Defendant Sierra-Rodriguez's Motions to Suppress.

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 4-17-12