UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

       Plaintiff,

                                   Case No. 10-20338

v.                                     Paul D. Borman
                                   United States District Judge

JESUS DANIEL MEDINA-MERAZ, D-4

       Defendant.

_____/

**OPINION AND ORDER**
**DENYING DEFENDANT MEDINA-MERAZ'S MOTION TO SUPPRESS EVIDENCE**
**SEIZED PURSUANT TO SEARCH WARRANTS AND FOR AN EVIDENTIARY**
**HEARING PURSUANT TO *FRANKS V. DELAWARE* 438 U.S. 154 (1978)(DOCKET 182)**

This matter is before the Court on Defendant Medina-Meraz's Motion to Suppress Evidence Seized Pursuant to Two Search Warrants and for an Evidentiary Hearing Pursuant to *Franks v. Delaware* 438 U.S. 154 (1978) (Dkt. 182).

The first search warrant, filed on March 2, 2010, sought: "The corporate business and computer records relating to the live cell site data and precise GPS location data for cellular phone number __ maintained by Sprint/Nextel for a period of 60 days." DEA Special Agent Michael Jeneary signed the affidavit.

The second search warrant, filed on April 29, 2010, sought: "Acquisition of live cell site data and precise location data concerning Sprint/Nextel Communications Telephone assigned

1

cell number 720-987-6666 . . . for a period of 60 days, April 28 to June 27, 2010, subscribed to Fabiola Aguirre-Jiminez, at 3020 West Jefferson Avenue, Englewood, Colorado 80110." DEA Special Agent Marwan Kassar signed the affidavit.

It is relevant to note that neither affidavit/request was directed at the person or residence of Defendant Medina-Meraz.

For the reasons that follow, the Court DENIES Defendant Medina-Meraz's Motion.

## I. BACKGROUND

### A. The Parties' Stipulation Regarding the December 10, 2009 Traffic Stop

On March 23, 2012, the Court held a hearing on Defendant Medina-Meraz's instant Motion, which also included a request for an evidentiary hearing to suppress evidence seized as a result of the December 10, 2009 traffic stop near Ann Arbor, MI. That traffic stop, recounted in Paragraph 8 of both affidavits, resulted in the seizure of Defendant's Mexican Consular ID Card, and a cell phone in his possession with phone number, 720-987-6666.

At the March 23rd hearing, the Government stated that it would not go forward on introducing evidence in support of the propriety of the December 10th traffic stop. The Government stated that it could not meet its evidentiary burden of demonstrating that the December 9th search of a 2007 Dodge Charger, Colorado license plate #790SSB, driven by Defendant Medina-Meraz in Michigan, was consensual, because the Michigan State Trooper's recollection was not certain with regard to the events surrounding the stop. Accordingly, the Government stated that it would not seek to introduce at trial any evidence obtained from that traffic stop in its case-in-chief, and the parties agreed to enter into a stipulation to that effect. (Dkt. 339).

In pertinent part, the stipulation signed by both parties stated:

> [T]he Government did not believe it could sustain its burden of proving consent for the search, due to the lack of memory by the officer who spoke with Defendant and whom reportedly received consent for the search. The Government therefore agrees not to use evidence obtained during the search of the 2007 Dodge Charger on December 10-11, 2009 in its case-in-chief at trial. The parties agree that Defendant's motion to suppress (Dkt. 183) is moot.

The parties further stipulated that the Court should disregard all of paragraph 8, except for this first sentence: "In the late evening hours of December 10, 2009, agents conducted surveillance of Medina-Meraz as he departed the Holiday Inn Express", in evaluating whether the search warrant affidavits established probable cause.

The Court, thereafter, invited briefs regarding how that stipulation impacts the validity of the two search warrants. Both parties took up the Court's invitation: Defendant Medina-Meraz filed a Supplemental Brief (Dkt. 328); the Government filed a Response (Dkt. 341).

### B. The Search Warrants at Issue and the Parties' Positions Regarding the Effect of the Stipulation

Paragraphs 6 and 7 of the affidavits in both warrants identified co-defendant Enrique Amaya as a significant drug dealer in the Detroit Metropolitan area. Paragraphs 9 and 11 identified Defendant Medina-Meraz as an associate of co-defendant Amaya.

Specifically, the search warrant applications recounted in paragraph 7 and 9, that agent surveillance of Amaya in December 2009, identified Medina-Meraz as an associate of Amaya. That this information was learned four months previous to the instant search warrants, does not make it stale, given the scenario of a large scale ongoing drug trafficking conspiracy.

Further, the March 31, 2009 Nebraska traffic stop described in paragraph 9, that found

3.4 kilograms of cocaine, revealed Medina-Meraz's link to large scale drug trafficking.

Defendant argues that the affidavits in support of the search warrants did not establish probable cause as required under the Fourth Amendment, in particular, after redacting the traffic stop facts set forth in Paragraph 8 after the first sentence. Defendant further alleged that the search warrants contained both false and stale information. Defendant argued that the "good faith" exception to the exclusionary rule should not apply to the instant "bare bones" affidavit. Finally, Defendant, building upon the Government's stipulation to withdraw most of Paragraph 8, argued that a *Franks* hearing should be held because it would provide additional reasons to invalidate the warrants.

The Government argued that the two search warrants were supported by probable cause, even after redacting all but the first sentence in Paragraph 8. The Government also contends that the facts in the search warrant were not stale, and did not contain false information.

The Government further argued that, even if the search warrant was defective, this was not a "bare-bones" affidavit, and that the "good faith" exception to the exclusionary rule, set forth in *United States v. Leon*, 468 U.S. 897 (1984), should apply. Finally, the Government posits that Defendant Medina-Meraz is not entitled to a *Franks* hearing because he failed to meet his burden of making the substantial preliminary showing required under the law.

## II. ANALYSIS

Defendant Medina-Meraz argues that the stipulation to suppress the evidence seized as a result of the December 10 and December 11, 2009, traffic stop – his identity and his cell phone – requires that any reference in the affidavit to his identity, and his connection to the cellular telephone number ending in -6666, must be excluded from the Court's consideration as to

whether the warrant contained facts sufficient to amount to probable cause. In essence, Defendant asserts that there was no other basis to establish Defendant's identity and the phone number. Defendant further asserts that the stipulation must be read as a Government concession that it utilized false information in the affidavit, and that this strongly supports Defendant's request for a *Franks* hearing.

The government asserts that the stipulated agreement to not introduce at trial any evidence derived from the traffic stop on December 10-11, 2009, does not transform the officers' conduct into "false statements" or "material omissions", and that there is no basis for a *Franks* hearing.

The Court agrees with the Government. The Court further concludes that the evidence before the Court, discussed *infra*, establishes that prior to the traffic stop and the resulting seizures of Defendant Medina-Meraz's identification card and a cell phone registered to his girlfriend Fabiola Aguirre-Jiminez in Colorado, the agents knew Defendant's name and the existence of this particular cell phone.

The Court further also concludes that Medina-Meraz's identity is also admissible under Supreme Court and Sixth Circuit precedent; and that both his identity and the cell phone number are admissible under the "independent source" doctrine and the "inevitable discovery" doctrine.

**A.     Identity**

In *United States v. Navarro-Diaz*, 420 F.3d 581, 587 (6th Cir. 2005) (quoting *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984)), the Sixth Circuit held, in refusing to suppress the identity information, seized improperly, that because the defendant was not the victim of an egregious violation of the Fourth Amendment in his stop and questioning by the police, his

5

identity was not suppressible as a fruit of an unlawful arrest. The Sixth Circuit in *Navarro-Diaz* further noted that in *United States v. Crews*, 445 U.S. 463 (1980) "the Supreme Court permitted a defendant to be brought to trial even though he was legally arrested." The Court held that although the exclusionary sanction applies to any fruits of a constitutional violation, a defendant is not himself a suppressible fruit. *Id*. 586. The instant situation involving accessing Defendant Medina-Meraz's identity did not transgress notions of fundamental fairness. Thus, even if the independent source doctrine and the inevitable discovery doctrine, discussed *infra*, were not applicable, Defendant Medina-Meraz's identity is not subject to suppression given the circumstances of his traffic stop.

As to Defendant's identity, the Court notes that a DEA 6 report of 12-11-2009, authored by SA Jeneary, attached to Defendant's supplemental brief identifies that the resident of the room Amaya rented was not Jesus Medina as Defendant contends, but Jesus Meraz. Thereafter, per the second page of the DEA 6, a hotel employee tipped off Medina-Meraz that the police were there inquiring about Amaya, so Meraz took his belongings, wiped down the room, went to the front desk and paid cash to check into a room under his own name. The agents subsequently verified
 that the hotel registry showed Defendant staying in room 3322.

Agents then established surveillance at the Holiday Inn Express at 8:13 p.m. December 9, 2009, and on December 10, 2009 saw Meraz leave the hotel and drive the black 2007 Dodge Charger with a Colorado license plate. Later, agents saw him leave the parking lot in the car accompanied by the hotel employee who tipped him off to the police investigation, Yadira Lopez.

6

Later that day agents saw Meraz arrive at the El Maguey restaurant at Pontiac, as did 5 minutes later, Amaya. Further, an hour later, agents saw Victor Hugo Medina exit Meraz's room and drive to that restaurant. Later, Meraz was stopped while driving westbound on I94 near the city of Ann Arbor. The subsequent search revealed Meraz's cell phone.

All of these aforestated facts were in possession of the agents at the time they secured the search warrants for the phone records.

Finally, the Court accepts the affiants contentions in paragraphs 11 and 12, that it was necessary in order to gain critical evidence in this drug trafficking, that the instant warrants be authorized because the reasons, set forth in paragraphs 11 and 12, that attempted physical surveillance or trash pulls would not work.

The Court agrees with the Government's argument at Pp. 6-7 of its Response to Defendant's Supplemental Brief Dkt. # 341, Pp. 6-7:

> [A]t the time SA Jeneary applied for the warrant, he knew that co-defendant Amaya and Victor Medina were associates of the defendant. He also knew that the defendant was staying in a hotel rented by co-defendant Amaya. And importantly, the defendant had been named as a coordinator of a shipment of approximately 3.4 kilograms of cocaine during a traffic stop in Nebraska. (*See* Affidavit, Doc. 182, Ex. A/B ¶¶ 6 and 9). Since the defendant was already implicated in a seizure of a large amount of cocaine that was transported across the country, it was not unreasonable for the agents to conclude that the defendant was involved with drug trafficking activity, particularly since he was staying in a hotel room that Amaya, a known drug dealer, rented for him.

**B.** **Independent Source Doctrine**

The independent source doctrine permits the government to introduce evidence "discovered through sources wholly independent of any constitutional violation." *United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (quoting *Nix v. Williams*, 467 U.S. 431, 443 (1984).

"The exclusionary rule should 'put the police in the same, not a worse position tha[n] they would have been in if no police error or misconduct had occurred.'" *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010) (quoting *Murray v. United States*, 487 U.S. 533, 537 (1988)) (emphasis in original); quoting *Nix*, 467 U.S. at 443 [1984]). *Howard* continues: "Accordingly, where 'challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been absent any error or violation.'" *Id.* (quoting *Nix* at 443). This doctrine applies to both evidence "obtained for the first time during an independent lawful search" and "evidence initially discovered during, or as a consequence of, an unlawful search but later obtained independently from activities untainted by the initial illegality." *Id*.

In the instant case, DEA Agents learned that Defendant Amaya was a major narcotics trafficker in the Detroit area, had subpoenaed co-defendant Amaya's cellular telephone records, and learned that he had been calling the cellular telephone number ending in -6666. On December 1, 2009, nine days before the traffic stop, SA Jeneary sent an administrative subpoena to Sprint for records on the cellular telephone ending in -6666. Those records indicated that the subscriber was Fabiola Aguirre Jiminez at 3020 W. Jefferson, Englewood, CO, and that the telephone had been used to call co-defendant Amaya. Thus, the Government had discovered the cellular telephone number ending in -6666 from an independent source prior to the December 10 and December 11, 2009, traffic stop. The Government also knew, as set forth in Paragraph 7, from surveillance in late 2009, that Defendant Medina-Meraz was an associate of Amaya, and that Medina-Meraz was driving a car in Michigan with Colorado license plates that was registered to another person, residing in Colorado. The Government had also learned of Jesus

Daniel Medina-Meraz prior to the traffic stop. It bears repeating, that the instant warrant applications related to the phone number, not to Defendant Medina-Meraz.

### C. Inevitable Discovery Rule

In *Howard*, the Sixth Circuit also discussed the second pertinent exception to the exclusionary rule: the inevitable-discovery doctrine, that permits tainted evidence to be "admitted "if it inevitably would have been discovered." *Howard*, 621 F.3d at 451 (quoting *Murray*, 487 U.S. at 539).

In the instant case, the victim, Joaquin Lucero Carrillo was murdered in the early morning hours of June 1, 2010, at an apartment complex in Littleton, Colorado. Law enforcement officers found Defendant Medina-Meraz' truck at the apartment complex and requested permission to search the vehicle. Defendant Medina-Meraz provided his full name to law enforcement officers on the Consent to Search form that he signed to permit police to search that truck. Additionally, the victim Carrillo had provided the apartment complex with the name "Jesus Medina" and the telephone number ending in -6666, as his emergency contact. Thus, the Government would have inevitably obtained the name of Defendant Medina-Meraz and his connection to the cellular telephone number ending in -6666, without any use of the information gained in the traffic stop.

### D. Good Faith Exception

Even if the warrant did not establish probable cause, the evidence obtained from it should not be suppressed because the Government agents reasonably relied on the court authorized warrant in good faith. In *United States v. Leon*, *supra*, the Supreme Court ruled that the exclusionary rule does not apply where a law enforcement officer reasonably relies on a

magistrate judge's probable cause determination in good faith. The Court stated, however, this good faith exception does not apply where (1) the supporting affidavit contains information the affiant knew or should have known was false; (2) the issuing magistrate lacked neutrality and detachment, (3) the affidavit is devoid of information that would support a probable cause determination making any belief that probable cause existed completely unreasonable; or (4) the warrant is facially deficient. *Id.* at 905, 914-15, 922-23.

Defendant argues that the good faith exception does not apply. The Court disagrees. As discussed, *supra*, the instant affidavit established probable cause. Even assuming, however, that the instant affidavit did not establish probable cause, SA Jeneary's reliance on the search warrant was not unreasonable, as the affidavit was not a bare bones affidavit, devoid of information that would support a determination of probable cause. Indeed, the affidavits contained a significant amount of facts establishing probable cause.

**E.** *Franks* **Hearing**

To be entitled to a *Franks* hearing to challenge the validity of the search warrant, *Franks v. Delaware*, 438 U.S. 154 (1978), Defendant Medina-Meraz must (1) "provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth", and (2) "that the allegedly false statements were necessary for the magistrate's determination of probable cause." *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). Also see *Delta Engineering v. United States* 41 F.3d 259, 262 (6th Cir. 1994).

Defendant Medina-Meraz has failed to make a substantial preliminary showing that a false statement was made. Redaction of the December 10 and December 11, 2009 traffic stop

from the instant affidavit does not render the statements in the affidavit relating to the traffic stop false or misleading. Moreover, as discussed, *supra*, the instant affidavit provided the Magistrate Judge with a substantial basis for determining that probable cause existed, even after the information related to the December 10 and December 11, 2009 traffic stop is redacted. Thus, the statements in the instant affidavit relating to the traffic stop were not necessary for the Magistrate Judge's determination of probable cause. Further, there is absolutely no evidence that the affidavit made any statements or omissions "knowingly and intentionally or with reckless disregard for the truth as required to invalidate the search warrant. *United States v. Carney*,

__F.3d__ (6th Cir. 2012) 2012 WL 1172179, April 10, 2012, citing with approval *Delta Engineering, supra*, and *Franks, supra*, Slip Op. Pp. 5-6.

Defendant's allegations of falsity in the affidavit, contained on page 4 of his Supplemental Brief Doc. # 328, P.4, regarding Defendant's home address and the use of his cell phone do not set forth any factual basis for these claims to support a *Franks* hearing. There was very strong evidence supporting the issuance of the search warrants for the phone live cell site and precise location data for the instant phone. Certainly, this was not a bare bones affidavit that would remove this case from receiving the application of the *Leon* exception to the application of the exclusionary rule.

### F. Additional Issues

Defense counsel further argues that the agents falsely claimed (1) that they did not have Medina-Meraz's home address as a reason to support issuance of the warrants, and (2) that he was using his cell phone to engage in drug trafficking activities. Defendant Medina-Meraz

11

Supplemental Brief, March 28, 2012 P.4 (Dkt. 328). Defense counsel does not provide any further supporting facts or affidavits in support of these claims. Defendant did not set forth facts that are convincing as to (1), and as to (2), there was abundant evidence of his cell phone use re drug activity.

## III. Conclusion

"To establish probable cause, this court has explained that 'the circumstances must indicate why evidence of illegal activity will be found in a particular place. There must, in other words, be a nexus between the place to be searched and the evidence sought.'" *United States v. Howard*, 621 F.3d 433, 455 (6th Cir. 2010) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(en banc)). The Court reviews the affidavit "simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (quoting *Carpenter*, 360 F.3d at 594)).

In March 2009, Defendant Medina-Meraz was implicated in a seizure of a large quantity of narcotics.[1] In December 2009, DEA agents learned that Defendant Medina-Meraz was staying at a hotel room in Pontiac, Michigan rented by co-defendant Amaya, a known drug trafficker, thereby tying those two together. Agents also learned that Defendant was driving a car registered to a person named Ricardo Castanon from Denver, Colorado. Additionally, Defendant Medina-Meraz's cellular telephone was subscribed to by a person named Fabiola

---

[1] Defendant contends that the information relating to the March 2009 seizure was stale. In *United States v. Hammond*, 351 F.3d 765, 771-72 (6th Cir. 2003), the Sixth Circuit found that a five-month delay between a confidential informant's tip and the application for a search warrant did not render the tip stale because "the crime of drug trafficking is ongoing . . . ." Given the instant ongoing large scale drug trafficking investigation, the Court finds the delay period between March and December 2009, does not render the information about the 2009 seizure state.

Aguirre-Jimenez. SA Jeneary knew, based on his training and experience, that drug traffickers often use fictitious names when purchasing cellular telephones in an effort to avoid law enforcement detection.

Based on the totality of the circumstances as contained in the four corners of the affidavit, as discussed *infra*, the Court concludes that probable cause existed based on the information contained in the affidavits for the search warrants seeking live cell site data and precise location data, even after redacting the portion of the affidavit that mentioned the December 10 and December 11, 2009 traffic stop. Moreover, the independent source doctrine and the inevitable discovery rule support admissibility. Finally, even if the warrant did not establish probable cause, the good faith exception applies and Defendant is not entitled to a *Franks* hearing where there has been no palpable evidence of false statements.

For the foregoing reasons, the Court DENIES Defendant Medina-Meraz's Motion to Suppress Evidence seized pursuant to the two search warrants April 2, and April 29, 2010, for live cell site and precise GPS location data.

**IT IS SO ORDERED**.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: April 19, 2012

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 19, 2012.

S/Denise Goodine
Case Manager